IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ERIC M NEGRIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | NO. 5:21-CV-269-MTT-CHW |
| | : | |
| CAPTAIN BUSTER KING, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

# ORDER

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Eric M. Negrin, an inmate who is currently incarcerated in the Autry State Prison in Pelham, Georgia, has filed a Supplemental Complaint (ECF No. 15) which must be screened pursuant to 28 U.S.C. § 1915A and § 1915(e). Following such screening, Plaintiff's medical treatment and retaliation claims against Defendants King, Ford, Marcus, Adside, and Graham shall proceed for further factual development alongside those same claims that are already proceeding against Defendant Nurse Tina Howell. Plaintiff's newly asserted conditions-of-confinement claims against Defendants King, Ford, Marcus, Adside, Graham, and Howell shall also proceed for further factual development.

## MOTION TO STAY

Plaintiff has also filed a motion to stay this case (ECF No. 13). In his motion, Plaintiff states he has been transferred twice in recent months and that he was diagnosed with COVID-19 on two separate occasions. Mot. Stay 1-2, Jan. 10, 2022, ECF No. 13.

Plaintiff alleges that prison officials lost some of his legal documents during these transfers and that he requires that each of his cases be "delay[ed] or postpone[d] . . . until further notice" because he is "sever[e]ly sick w/COVID." *Id.* at 2. Plaintiff, however, has been actively participating in this case despite his illness and difficulties with his paperwork, and he has also reassured the Court that he is "working diligently to respond & to prosecute all [his] pending civil suits." Notice 1, Jan. 26, 2022, ECF No. 16. Accordingly, there does not appear to be any reason to stay the above-captioned action at this time. Plaintiff's motion (ECF No. 13) is therefore **DENIED**.

## PRELIMINARY REVIEW OF SUPPLEMENTAL COMPLAINT

I.  Standard of Review

As Plaintiff is by now aware, the Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which

relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*,

3

340 F.3d 1279, 1282-84 (11th Cir. 2003).

 II. Factual Allegations

Plaintiff's claims arise from his pretrial detention in the Wilkinson County Jail ("WCJ") beginning on June 20, 2021. Suppl. Compl. 1, ECF No. 7. On that date, Plaintiff slipped and fell in "the outside rec/yard . . . which caused [him] new & severe damage to [his] lower back," including several herniated discs in his lower back and hips. *Id.* Plaintiff also contends this fall "aggr[a]vated [his] existing upper back & neck injury" for which Defendants Dr. Graham and Nurse Howell had previously provided him treatment. *Id.*

Plaintiff alleges that Defendants Howell and Graham and WCJ officials King, Ford, Marcus, and Adside denied him any medical treatment at all for six to eight weeks after his fall. Suppl. Compl. 1, ECF No. 7. After approximately eight weeks, Defendant King permitted Plaintiff to undergo MRI testing which showed "the severity of the damage that occurred at the time of this injury," but Defendants still failed to provide Plaintiff with adequate treatment. *Id.* In addition, Defendants refused to permit Plaintiff to remain in his bunk during the day, which required Plaintiff to "sit on a 10 inch diameter steel stool and/or the concrete floor" for approximately twelve hours a day. *Id.* at 3. Plaintiff alleges that his inability to rest in a comfortable position and the overall lack of treatment has caused his injuries to worsen significantly. *Id.* Further, Plaintiff believes Defendants' refusal to provide him with adequate medical treatment for his injuries is retaliatory because he has filed multiple lawsuits against each of the named Defendants. *Id.* at 4.

Plaintiff also contends that WCJ's outside recreation area where he slipped and fell is unreasonably dangerous. Suppl. Compl. 5, ECF No. 7. Plaintiff describes the area as

4

having an outer walking area that circles a large drain, and he states that the walking area has an "extremely . . . steep . . . pitch" that is hazardous. *Id.* In addition, Plaintiff contends the concrete portion of the walking area is painted with "an extremely high gloss, oil based paint" that is "extremely slippery, especially when wet." *Id.* Plaintiff further alleges that mold often grows in this area "due to broken rain gutters & spouts that pour into the area," and that "[t]his mold also causes the surface to be very slippery." *Id.* at 6. Plaintiff contends that in the five months he was housed at WCJ, he personally witnessed four individuals suffer "severe[]" slip and fall injuries in this area, at least three of whom required transportation to the emergency room for treatment. *Id.* Plaintiff also alleges that jail officials know this area is dangerous. *Id.* Plaintiff thus contends that Defendants' actions and inaction with respect to his fall and the allegedly inadequate medical treatment provided thereafter violates his constitutional rights. *Id.* at 1. As a result, he seeks declaratory and injunctive relief as well as monetary damages.

    III.    <u>Plaintiff's Claims</u>

        A.    <u>Medical Treatment Claims</u>

Plaintiff alleges that Defendants are liable for failing to properly treat his neck and back injuries and the pain resulting therefrom. A prisoner who demonstrates that a prison official was deliberately indifferent to his serious medical needs can state a constitutional claim. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *Goodman*, 718 F.3d at 1331 n.1.[1] "To show that a prison official acted with deliberate indifference to serious medical

---

[1] The standard for deliberate indifference in the context of a medical claim is the same whether the inmate is a pretrial detainee or convicted prisoner, even though such claims

5

needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow*, 320 F.3d at 1243.  A plaintiff must first "set forth evidence of an objectively serious medical need" and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.*  In other words, prison officials must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).  For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted).  A "serious medical need" may also exist when "a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).

Plaintiff's allegations are sufficient to demonstrate that he had a serious medical need, at least for purposes of preliminary screening.  In his Supplemental Complaint, Plaintiff has also alleged that Defendants King, Ford, Marcus, Adside, and Graham knew of these injuries and refused to provide him with treatment. *See, e.g.,* Suppl. Compl. 2, ECF No. 15 (stating that Defendants Ford, Marcus, Adside, and King "were all informed & present during every sick call and complaint of pain & need for medical treatment" and that "[o]n multiple occasions" Defendants Howell, Graham, and King "confer[r]ed" about

---

brought by a convicted prisoner arise under the Eighth Amendment to the United States Constitution rather than the Fourteenth Amendment. *Dang v. Sheriff*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017).  The Eleventh Circuit has also indicated that it will continue to use the subjective deliberate indifference standard unless a pretrial detainee is asserting an excessive force claim.  *Swain v. Junior*, 961 F.3d 1276, 1285 n.4 (11th Cir. 2020).

the severity of Plaintiff's injuries); *see also id.* at 3 (stating that even though Plaintiff "caused a big STINK" with all Defendants regarding denial of access to his bunk, Defendants still denied Plaintiff access despite knowing of his injuries). Plaintiff also repeatedly emphasizes that the lack of medical care has caused his medical condition to worsen. *See id.* These allegations are sufficient to permit Plaintiff's deliberate indifference claims against Defendants King, Ford, Marcus, Adside, and Graham to proceed for further factual development. *See, e.g., McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) (failure to treat severe pain could be considered deliberate indifference to a serious medical need).

### B. Retaliation Claim

Plaintiff also alleges that Defendants have refused to provide him with adequate medical treatment because he complained about the lack of treatment and because he had previously filed lawsuits against each of the named Defendants. Suppl. Compl. 5, ECF No. 15 ("The more I filed, the more retaliation occurred by these people."). It is well established that an adverse action imposed in retaliation for a prisoner's exercise of a constitutionally protected right is actionable. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam). To prove a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). At this early stage of the litigation, the Court cannot say that Plaintiff's allegations that Defendants withheld medical treatment in retaliation for the lawsuits

7

Plaintiff filed against each of them individually are entirely without merit. The retaliation claims against Defendants King, Ford, Marcus, Adside, and Graham shall accordingly proceed for further factual development.

        C.      Conditions-of-Confinement Claims

Plaintiff also appears to raise a challenge to the conditions of his confinement by alleging that the outdoor recreation area at WCJ was unreasonably dangerous. "Conditions of confinement imposed prior to conviction are limited . . . by the due process clause of the fourteenth amendment." *Hamm v. Dekalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985); *see also Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020). The standard with respect to providing pretrial detainees with basic necessities while incarcerated is the same standard as required by the Eighth Amendment for convicted persons: "[t]he Eighth Amendment—and therefore the Fourteenth also—is violated when a jailer is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." *Swain*, 961 F.3d at 1285. Like a claim for deliberate indifference to serious medical needs, a prisoner seeking to establish a deliberate indifference claim in this context must make subjective and objective showings. *Id.* First, the plaintiff must demonstrate that the deprivations about which he complains are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010); *see also Brooks v. Warden*, 800 F.3d 1295, 1303-04 (11th Cir. 2015). This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal

quotation marks omitted), or if society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  Second, the plaintiff must establish that prison officials were deliberately indifferent to that risk by showing "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Swain*, 961 F.3d at 1285 (internal quotation marks omitted).

At this early stage of the litigation, the Court cannot say that Plaintiff's conditions-of-confinement claims are necessarily frivolous.  Plaintiff has alleged that in five months, at least three individuals suffered injuries in the outdoor recreation area that were so severe they required offsite emergency medical care.  Plaintiff further alleges that Defendants Howell, Ford, Marcus, and Adside informed him that "'many people/inmates have slipped and fell on the yard because of the foundation & painted surfaces, over the years,'" and another officer told Plaintiff "that he has transported 'a heap of inmates' to the emergency room over the last few years for injuries that happened on the yard of (WCJ)" and that "they need to fix the rec area but that it would cost too much[.]"  Suppl. Compl. 6, ECF No. 15.  Plaintiff's conditions-of-confinement claims against Defendants Howell, Ford, Marcus, and Adside shall therefore proceed for further factual development.  *See, e.g., Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (holding that "[s]lippery floors without protective measures could create a sufficient danger to warrant relief" where prisoner pleaded fact sufficient to show that prison officials "knowingly subjected him to the risk of falling, thereby exhibiting a deliberate indifference to his well-being").

Plaintiff has not specifically included any allegations describing what knowledge Defendants King and Graham had concerning the condition of the recreation area. Construing liberally, however, Plaintiff's allegations suggest that these individuals knew that the recreation yard was unreasonably dangerous, given their relative positions of authority and the alleged frequency and severity of the injuries suffered by the inmates. *Cf., e.g., Q.F. v. Daniel*, 768 F. App'x 935, 946 (11th Cir. 2019) (per curiam) (noting that "the defendants' supervisory positions suggest, at least by inference, that the defendants were aware of the staffing, classification, and segregation issues" at the prison). Accordingly, these claims cannot be dismissed at this very early stage of the litigation. Plaintiff's conditions-of-confinement claims shall therefore also proceed against Defendants King and Graham.

IV.     Conclusion

For the foregoing reasons, Plaintiff's motion to stay (ECF No. 13) is **DENIED.** Plaintiff's medical treatment and retaliation claims against Defendants King, Ford, Marcus, Adside, and Graham shall proceed for further factual development alongside those same claims that are already proceeding against Defendant Nurse Tina Howell. In addition, Plaintiff's conditions-of-confinement claims against Defendants King, Ford, Marcus, Adside, Graham, and Howell shall proceed for further factual development. Defendant Howell is also instructed to disregard the Court's previous instructions advising her that she would not be required to answer the Supplemental Complaint. *See* Order 2, Jan. 14, 2022, ECF No. 14. Given Plaintiff's assertion of the conditions-of-confinement claims

therein, Defendant Howell will be required to answer the Supplemental Complaint with respect to those claims.

## ORDER FOR SERVICE

Having found that certain of Plaintiff's allegations against Defendants King, Ford, Marcus, Adside, Graham, and Howell warrant further factual development, it is accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing

supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED**, this 4th day of April, 2022.

s/ Charles H. Weigle<br>
Charles H. Weigle<br>
United States Magistrate Judge